**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VIVIANE JOSEPH and TIMOTHY MOFFITT,**
**on behalf of themselves and all others similarly**
**situated,**

                                                  **Plaintiffs,**

        **-against-**                                    **5:11-CV-1387 (TJM/ATB)**


**JETBLUE AIRWAYS CORPORATION,**
**a Delaware corporation,**

                                                  **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**



                                **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiffs commenced this action asserting claims under New York state law against

Defendant JetBlue Airways Corporation ("JetBlue") after certain JetBlue flights were

diverted to Bradley International Airport ("BDL") on October 29, 2011 due to heavy winter

storm conditions in the Northeast region of the United States. See Am. Compl., dkt. # 11.

Plaintiffs' claims are predicated on the contention that JetBlue unlawfully and improperly

confined Plaintiffs as passengers on the diverted aircrafts for a period in excess of seven

(7) hours on the tarmac at BDL.  Id.  JetBlue moves to dismiss the action on the grounds

that Plaintiffs' state law claims are expressly preempted by the Airline Deregulation Act of

                                        1

1978 ("ADA"), 49 U.S.C. § 41713(b)(1), and impliedly preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. §§40101 *et seq*., and its implementing regulations. See Mot., dkt. # 14. Additionally, Defendant contends that Plaintiffs fail to set forth facts necessary to state a claim upon which relief may be granted for each of their causes of action. Id. Plaintiffs have opposed the motion, see Opp., dlt. # 19, and JetBlue has filed a reply. See Reply, dkt. # 21.

## II.   BACKGROUND

On October 29, 2011, winter storm conditions in the Northeast region of the United States caused numerous flights to be diverted from New York City-area airports to Bradley International Airport ("BDL") near Hartford, Connecticut. Am. Compl., ¶ 14. Six JetBlue flights were diverted to BDL, and the named Plaintiffs were passengers on two of these flights, namely Flight 504 (Fort Lauderdale-Newark) and Flight 1013 (Boston-New York). Id., ¶¶ 10-11, 15, 21, and 33. Both named Plaintiffs are citizens and residents of Florida. Id., ¶¶ 10-11.

Plaintiffs allege that their aircrafts were stranded on the tarmac at BDL for over seven (7) hours. Id., ¶¶ 22 and 34. Plaintiffs contend that during their respective tarmac delays, "the conditions upon the aircraft became inhumane and intolerable," (id., ¶¶ 24, 37); that "rolling power outages" left the aircraft in "total darkness" for periods of time (id., ¶¶ 25, 38); that JetBlue "ran out of supplies for its passengers" and they were "left without food and drinking water" (id., ¶¶ 26, 39); and that JetBlue failed to have "potable water supplies for proper functioning of lavatories and sinks" (id., ¶¶ 27, 40). Plaintiffs also allege that "passengers began to argue and fight with one another" and "physical and

2

verbal violence between passengers was rampant." Id., ¶¶ 24, 37.  The Captain of Flight 504 is heard on a recorded conversations with BDL air traffic control tower personnel asking for a police officer to come on board and, in another conversation, for a tow of the aircraft to a gate to disembark the passengers.  Id. ¶¶ 30, 31.

Plaintiffs claim that JetBlue engaged in unfair and deceptive trade practices under New York's General Business Obligations Law §§ 349, 350.  Specifically, they allege that JetBlue "unfairly and deceptively" diverted flights from their intended destinations and created "intolerable and inhuman conditions" on its aircraft.  Id., ¶¶ 59-60.

Plaintiffs also allege that JetBlue breached the implied covenant of good faith and fair dealing in their contracts with Plaintiffs. Id., ¶¶ 64-65.  According to Plaintiffs, JetBlue breached its contracts by violating the "Passenger Bill of Rights and Tarmac Contingency Plan" and by "engaging in unfair and deceptive conduct." Id., ¶ 68.  Plaintiffs further allege that JetBlue "engage[ed] in inequitable and deliberate misconduct" (id., ¶ 70) and acted "deliberately indifferent to . . . any potential benefit to Plaintiffs" (id., ¶ 72) and in "bad faith" (id., ¶ 73).

Plaintiffs also bring claims for false imprisonment, negligence, and negligent infliction of emotional distress.  Specifically, Plaintiffs allege that JetBlue falsely imprisoned them by "intend[ing] to confine" its passengers and "refus[ing] to allow" them to deplane the aircraft diverted to BDL. Id., ¶¶ 76-77.  Plaintiffs were aware of their confinement, repeatedly demanded their release, and did not consent to or approve of the confinement. Id., ¶¶ 76-78.  Plaintiffs claim that the confinement was not privileged. Id., ¶ 80.  In their negligence claim, Plaintiffs contend that JetBlue owed them a duty to exercise reasonable care under the circumstances, but breached this duty by subjecting them to rolling power

3

outages and denying them food and water, access to medication, serviceable sinks and lavatories, the ability to exit the aircraft, and other basic human necessities. Id., ¶ 85. According to Plaintiffs, JetBlue also deviated from the standard of care by rerouting its aircraft in the direct line of a winter storm. Id., ¶ 86. Plaintiffs' claim for negligent infliction of emotional distress contends that the conditions on the aircraft "unreasonably endangered" Plaintiffs by causing them "severe emotional distress" and "fear for their safety." Id., ¶ 91.

## II.    DISCUSSION

### a. Whether Plaintiffs' state law claims are preempted

JetBlue argues that Plaintiffs' state law claims are barred by the express preemption clause of the Airline Deregulation Act of 1978 ("ADA") and, to the extent Plaintiffs' state law claims relate to airline consumer protection, air safety, tarmac delays, and other areas regulated by the federal government, they are preempted by principles of implied "field preemption" and "conflict preemption" under the Federal Aviation Act of 1958 ("FAA"). Plaintiffs argue that their claims are not preempted.

### 1.   Preemption Generally

It is a "fundamental principle of the Constitution" that the Supremacy Clause gives Congress the power to preempt state law. Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000); see U.S. Const. art. VI, cl. 2; Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008)("ATA")(The Supremacy Clause of the United States Constitution, article VI, clause 2, declares that "the laws of the United States ... shall be the supreme law of the land," thereby "invalidat[ing] state laws that interfere with,

4

or are contrary to, federal law.") (internal quotation marks and citation omitted).  "When

considering a claim of federal preemption, a court's principal focus is discerning whether

Congress intended to displace an area of state law." Goodspeed Airport, LLC v. East

Haddam Inland Wetlands and Watercourses Com'n, 681 F. Supp.2d 182, 199 (D. Conn.

2010), aff'd 634 F.3d 206 (2d Cir. 2010)(citing Crosby v. Nat'l Foreign Trade Council, 530

U.S. 363, 372 (2000); Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev.

Comm'n, 461 U.S. 190, 203 (1983)).

> Congressional intent to preempt state law can be either express or implied.
> See, e.g., ATA, 520 F.3d at 220-21.  Express preemption . . . is present
> when "a federal statute expressly directs that state law be ousted." Id. at 220.
> Implied preemption comes in two varieties, known as field preemption and
> conflict preemption. Conflict preemption arises when state law "actually
> conflicts with federal law," id. at 220, such that it is not possible to comply
> with both and "state law stands as an obstacle to the accomplishment" of the
> congressional objective.  Hillsborough County v. Automated Med. Labs. Inc.,
> 471 U.S. 707, 713, 105 S. Ct. 2371, 85 L. Ed.2d 714 (1985).  Field
> preemption, on the other hand, is present under circumstances where it is
> clear that Congress intended for its regulation of a particular area (or "field")
> to be the *only* regulation, to which states and localities may not add or
> detract. See ATA, 520 F.3d at 221.  Courts infer the presence of this
> congressional intent when "the pervasiveness of the federal regulation
> precludes supplementation by the States, where the federal interest in the
> field is sufficiently dominant, or where the object sought to be obtained by
> the federal law and the character of obligations imposed by it ... reveal the
> same purpose." Id. (quoting Schneidewind v. ANR Pipeline Co., 485 U.S.
> 293, 300, 108 S. Ct. 1145, 99 L .Ed.2d 316 (1988)) (internal quotations
> omitted).

Goodspeed Airport, 681 F. Supp.2d at 199 (emphasis in original).

### 2.  The Airline Deregulation Act

The ADA, which amended the FAA, includes a preemption clause that prohibits any

state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force

and effect of law related to a price, route, or service of an air carrier. . . ." 49 U.S.C. §

41713(b)(1).  Congress enacted this provision "to ensure that the States would not undo federal deregulation with regulation of their own." <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 378 (1992). "The [Supreme] Court has therefore held that the words 'related to,' as used in this clause, 'express a broad preemptive purpose' and encompass all state laws 'having a connection with or reference to' airline prices, routes, or services, even if those laws do not directly regulate those activities." <u>Gill v. JetBlue Airways Corp.</u>, --- F. Supp.2d ----, 2011 WL 6258518, at *3 (D. Mass. Dec. 14, 2011)(quoting <u>Morales</u>, 504 U.S. at 383 and citing <u>American Airlines, Inc. v. Wolens</u>, 513 U.S. 219, 219 (1995)). "Under this standard, enforcement of state laws against airlines on the basis of how particular services are provided is preempted unless it affects those services in 'too tenuous, remote, or peripheral a manner' to warrant preemption." <u>Id.</u> (quoting <u>Morales</u>, 504 U.S. at 390).

In <u>ATA</u>, the Second Circuit found the New York Passenger Bill of Rights, a State legislative enactment addressing tarmac delays, was expressly preempted by §41713(b)(1), writing: "We hold that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays does relate to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision." <u>ATA</u>, 520 F.3d at 223.  In so holding, the Second Circuit rejected the rule adopted by the Ninth and Third Circuits to the effect that "service[s]" under this section means only air transportation, finding such an interpretation as "inconsistent with the Supreme Court's recent decision in <u>Rowe [v. New Hampshire Motor Transp. Ass'n</u>, 552 U.S. 364, 128 S. Ct. 989, 169 L .Ed.2d 933 (2008), where] the [Supreme] Court necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations." <u>ATA</u>, 520 F.3d at 223; <u>see</u> <u>id.</u> at 224 ("Onboard amenities, regardless of whether they are luxuries or necessities, still

6

relate to airline service.").

### 3.  The FAA and Implied Preemption

> [T]he FAA was passed by Congress for the purpose of centralizing in a single authority - indeed, in one administrator - the power to frame rules for the safe and efficient use of the nation's airspace. Congress and the Federal Aviation Administration have used this authority to enact rules addressing virtually all areas of air safety. These regulations range from a general standard of care for operating requirements, to the details of the contents of mandatory onboard first-aid kits, to the maximum concentration of carbon monoxide permitted in suitably vented compartments. This power extends to grounded planes and airport runways.

ATA, 520 F.3d at 224-25 (interior quotation marks and citations omitted).

The inquiry into whether state law is impliedly preempted by federal law is twofold: "we must determine not only Congressional intent to preempt, but also the scope of that preemption." Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm., 634 F.3d 206, 211 (2d Cir. 2011).  The key is to determine at what point the state regulation interferes with federal regulation that it should be preempted. Id.

In Goodspeed, the Second Circuit joined several sister circuits and "concluded that Congress intended to occupy the entire field of air safety and thereby preempt state regulation of that field." 634 F.3d at 210; see also U.S. Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1327 (10th Cir. 2010) ("[FAA's] comprehensive regulatory scheme … evidences the intent for federal law to occupy the field of aviation safety exclusively.").

The United States Department of Transportation (DOT) has promulgated comprehensive tarmac delay regulations. See, e.g., 14 C.F.R. §§ 259.1-259.7.  The regulations provide, *inter alia*, that carriers must adopt a Contingency Plan for Lengthy

Tarmac Delays ("Contingency Plan") that assures that:

> (1) . . . the air carrier will not permit an aircraft to remain on the tarmac for more than three hours unless:
>
>> (i) the pilot-in-command determines there is a safety-related or security-related reason (e.g. weather, a directive from an appropriate government agency) why the aircraft cannot leave its position on the tarmac to deplane passengers; or
>>
>> (ii) air traffic control advises the pilot-in-command that returning to the gate or another disembarkation point elsewhere in order to deplane passengers would significantly disrupt airport operations.

14 C.F.R. § 259.4(b)(1).

The Contingency Plan also must assure that the airline will provide adequate food and potable water no later than two hours into a tarmac delay, unless the pilot-in-command determines that safety or security considerations preclude such service. Id. at § 259.4(b)(3).  Operable lavatory facilities and medical attention, if needed, must be provided while the aircraft remains on the tarmac. Id. at § 259.4(b)(4).

JetBlue created a Contingency Plan for Lengthy Tarmac Delays consistent with these regulations. See Am. Compl. ¶¶ 19-20.[1]  The DOT has the authority to bring enforcement actions against the airlines for alleged unfair and deceptive trade practices arising from lengthy tarmac delays and purported violations of the regulations. See 14 C.F.R. § 259.4(e).

---

[1]JetBlue's Contingency Plan for Lengthy Tarmac Delays purportedly states: "At Two Hours: Unless, the Pilot-In-Command determines that safety or security precludes such service (e.g., weather, a directive from an appropriate government agency), the Carrier shall ensure the provision of: snack and drinking water service, potable water for operation of lavatories and sinks, operable lavatory facilities and adequate medical attention if needed.  At Three Hours for Domestic Flights: aircraft must be at gate with the door open or at remote parking with air stairs connected." Am. Compl. ¶ 19.  This Plan also states: "Exceptions to the Rule include, if in the judgment of the Pilot-In-Command there is a safety or security related reason not to return; if in the opinion of the FAA Air Traffic Controller movement of an aircraft subject to this Rule would cause operational difficulties." Id. ¶ 20.

8

### 4.  Plaintiffs' Claims

### a.  Deceptive Business Practices Claim

Plaintiffs' deceptive and unfair business practice claim seeks to recover for conduct related to JetBlue's routes and services and caused by alterations of its routes.  Plaintiffs have provided no compelling reason to distinguish New York's tarmac delay legislation from the substance of their New York General Business Law claim, both of which seek to impose obligations upon airlines to provide certain services during ground delays. Enforcing the state law deceptive practices statute in this case would have the "force and effect of law related to a price, route, or service of an air carrier," as prohibited by the ADA's preemption clause.  Therefore, for the reasons discussed in ATA, the Court finds that Plaintiffs' New York General Business Obligations Law §§ 349 and 350 cause of action is expressly preempted by § 41713(b)(1) of the ADA. See ATA, 520 F.3d at 224; see also Morales, 504 U.S. at 379; In re JetBlue Airways Privacy Litig., 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) (claims brought under state consumer protection laws represent "a direct effort to regulate" the airline's communications with its customers in connection with reservations and ticket sales); Butler v. United Air Lines, Inc., 2008 WL 1994896, at *6 (N.D. Cal. May 5, 2008) (finding it "unsurprising that plaintiffs have not cited a single case in which a consumer protection statute claim against an airline was held not preempted by the [ADA]").

Moreover, by enacting comprehensive and pervasive regulations on airline passenger protections, including regulations that specifically address tarmac delays and airline customer service plans, Congress plainly intended for the DOT to regulate how

9

airlines handle lengthy tarmac delays.  These federal regulations provide that the DOT is the agency empowered to address any unfair and deceptive trade practices by the airlines arising from tarmac delay situations. 14 C.F.R. § 259.4(e);[2] see also 49 U.S.C. § 41712 (DOT has plenary authority to "investigate and decide whether an air carrier ... has been or is engaged in an unfair or deceptive practice"). The federal government has occupied the field in enforcing these regulations, and, therefore, the state statutory unfair practice claim, which seeks private enforcement of these regulations, is also impliedly preempted by the FAA.

## b.   Breach of Implied Covenant Claim

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing alleges that JetBlue breached its contracts with Plaintiffs by violating the "Passenger Bill of Rights and Tarmac Contingency Plan" incorporated in their contracts, and by "engaging in unfair and deceptive conduct." Am. Compl. ¶ 68.  Plaintiffs further allege that JetBlue "engage[ed] in inequitable and deliberate misconduct" and acted in "bad faith." Id. ¶ 70,73.

> The Supreme Court has held that the ADA preemption clause does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." [Wolens, 513 U.S. at 228].  "The ADA does not preempt 'state-law-based court adjudication of routine breach-of-contract claims' as long as there 'is no enlargement or enhancement based on state laws or policies external to the agreement.'" Power Travel Int'l, Inc. v. American Airlines, Inc., 257 F. Supp.2d 701, 707 (S.D.N.Y.2003) (quoting

---

[2]Section 259.4 (e) states:

Unfair and Deceptive Practice. An air carrier's failure to comply with the assurances required by this rule and as contained in its Contingency Plan for Lengthy Tarmac Delays will be considered an unfair and deceptive practice within the meaning of 49 U.S.C. 41712 that is subject to enforcement action by the Department.

<u>Wolens</u>, 513 U.S. at 232-33).

<u>AIB Express, Inc. v. FedEx Corp.</u>, 358 F. Supp. 2d 239, 253 (S.D.N.Y. 2004).

The implied covenant claim seeks to add to the terms of JetBue's contractual obligations on matters related to routes and services.  The claim, which is functionally indistinguishable from the statutory unfair and deceptive practice claim, would interfere with the ADA's purpose of deregulating air carriers, and, therefore, is expressly preempted by the ADA.  <u>Id.</u>  Moreover, like the statutory unfair and deceptive practice claim, the implied covenant claim seeks to recover via a private enforcement action for the airline's obligations otherwise enforceable only by the DOT.   For the same reasons that the state statutory claim is preempted, the breach of the implied covenant contractual claim is also preempted.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Feldman v. United Parcel Service, Inc.</u>, 2008 WL 800989, at * 17-18 (S.D.N.Y. Mar. 24, 2008) (preempting claims based on breach of the implied covenant of good faith and fair dealing).

**c.   Tort Claims**

Turning to Plaintiffs' common law tort claims, the Court starts with the proposition that "a common-law tort action is a 'law, regulation, or other provision having the force and effect of law' within the meaning of the [ADA.]" <u>Weiss v. El Al Israel Airlines, Ltd.</u>, 39 Fed. Appx. 483, 485 (2d Cir. Feb. 13, 2009)(citing <u>Morales</u>, 504 U.S. at 386 (common-law tort suits can be preempted by the ADA)).

> In determining whether a state law claim concerning an alleged airline service is preempted by the ADA, numerous district courts in this circuit have adopted the three-part test established in <u>Rombom v. United Air Lines, Inc.</u>, 867 F.Supp. 214 (S.D.N.Y. 1994) (Sotomayor, J.). <u>See</u> <u>Farash v. Continental Airlines, Inc.</u>, 574 F.Supp.2d 356, 363 (S.D.N.Y. 2008) ("To assess whether a tort claim should be preempted, courts in the Southern District have generally applied the three-part test articulated in <u>Rombom</u>." ), <u>aff'd</u>, 2009

11

WL 1940653 (2d Cir. Jul 02, 2009). Under the <u>Rombom</u> test, a court must first determine whether "the activity at issue in the claim is an airline service." <u>Id.</u> at 221. If the activity is an airline "service" then the court must decide whether the plaintiff's claim affects the airline service "directly or tenuously, remotely or peripherally." <u>Id.</u> at 222. If the "specific state tort claim has only an incidental effect on a service, there is no preemption and the state tort action should continue." <u>Id.</u> Third, the court looks to see whether "the underlying tortuous conduct was reasonably necessary to the provision of the service." <u>Id.</u> "If the tortuous act did not occur during the service ... or did not further the provision of the service in a reasonable manner, then the state tort claim should continue." <u>Id.</u> This final prong of the <u>Rombom</u> test "has been applied only to exempt from preemption actions that are 'outrageous or unreasonable,' " [<u>Weiss v. El Al Israel Airlines, Ltd.</u>, 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006)] (quoting <u>Rombom</u>, 867 F. Supp. at 223).

<u>Bary v. Delta Airlines, Inc.</u>, 2009 WL 3260499, at *11 (E.D.N.Y. Oct. 9, 2009).

Plaintiffs argue that the tort claims escape preemption because (1) they do not "relate to services;" (2) if they do relate to services, they do not affect the services directly but rather have a tenuous, remote or peripheral impact on the services; (3) the alleged tortuous conduct was not reasonable necessary to the service provided; (4) the claims fall under the FAA's saving clause, 49 U.S.C. §1506,[3] and (5) the FAA requires airlines to have insurance for bodily injury, <u>see</u> 49 U.S.C. § 4112(a),[4] thereby signaling Congress's intent to preserve tort claims.  The arguments are without merit.

_____

[3]§1506 of the FAA states:

"nothing contained in this chapter shall in any way abridge or alter the remedies now existing in common law or by statute, but the provisions of this chapter are in addition to such remedies."

49 U.S.C. §1506.

Plaintiffs argue that because the FAA was amended by the ADA which added §1305 but failed to repeal or amend the "savings clause" found in §1506, and omitted "safety" from the federal regulations, Plaintiffs state law tort claims are not preempted.

[4]Requiring airlines to maintain insurance or self-insurance to cover "amounts for which… air carriers may become liable for bodily injuries to or the death of any person… resulting from the operation or maintenance of aircraft." 49 U.S.C. § 4112(a).

Plaintiffs' tort claims all relate to prices, routes, or services inasmuch as the claims are all premised upon complaints of Plaintiffs' treatment while they were detained on the tarmac at BDL.  See ATA, 520 F.3d at 223-224.  Simply stated, each claim relies on the facts arising from the tarmac delays and the nature of the services received from JetBlue during these periods.  Moreover, as explained below, the alleged tortuous conduct affected the services directly and was reasonably necessary to the service provided.

The false imprisonment claim has the essential element that JetBlue employees, and not the air traffic controllers at BDL, intentionally confined the passengers on the tarmac against the passengers' wills.  The alleged tortuous conduct directly affected, and was reasonably necessary to, the service of maintaining safety by controlling passengers' movement while the airplanes were grounded on the tarmac due to adverse weather conditions.  The false imprisonment claim, which challenges JetBlue's service related decision to keep its airplanes on the tarmac in the manner that it did, is expressly preempted by the ADA for the same reasons that New York's Passenger Bill of Rights was preempted.  See  ATA, 520 F.3d at 224

Moreover, to allow such a tort claim to proceed would subject airlines to a patchwork of obligations which might be contradictory to federal regulations.  See 14 C.F.R. § 139.329 (restricting runway/taxiway movements); 14 C.F.R. § 91.123(b) (requiring crew to comply with air traffic controller instruction); 14 C.F.R. § 91.3 (holding crew responsible for passenger safety); 14 C.F.R. § 121.533 (d)-(e) (same); 14 C.F.R. § 121.317(b), (f) (restricting passenger movement).  Because Congress intended to occupy the field of passenger safety while planes are grounded on tarmacs, the false imprisonment claim is also impliedly preempted by the FAA.

13

The negligence claim has the essential element that JetBlue breached its duty of care in scheduling its routes resulting in diversion of flights and subsequent tarmac delays, and by failing to properly provide amenities during lengthy ground delays.  As to flight schedules and diversion of flights, the direct connection to the airline's routes and services, and the necessity of the airline's ability to make decisions in this regard, is self evident.  Allowing a common law tort claim challenging an airline's ability to make decisions such as whether to divert and land a plane safely in the face of a winter storm subjects airlines to a patchwork of obligations that would eviscerate federal regulations aimed at air safety control.   This aspect of the negligence claim is clearly preempted by the ADA.

    As to the nature of the amenities provided during a tarmac delay, the Second Circuit has determined that these fall within the scope of airline services controlled by the ADA. See ATA, 520 F.3d at 223.  Moreover, the alleged tortuous conduct of not providing the level of amenities that Plaintiffs wanted during the tarmac delay affects the airline service directly, and was reasonably necessary to the provision of the service.  On this last point, the Court views the service as maintaining the aircraft, and the passengers in it, in a position of safety until the aircraft is cleared to leave the tarmac to disembark its passengers.  A claim challenging this service because the airline had not planned for such lengthy delay is expressly preempted by the ADA, ATA, 520 F.3d at 224, and impliedly preempted by the FAA because the claim has at its heart a challenge to the federal safety regulations that may required an airplane to remain on a tarmac for such a lengthy period of time until can be safely moved.

    Similarly, the negligent infliction of emotional distress claim has the essential

14

element that JetBlue breached its duty of care in providing proper services and controlling unruly passengers during long tarmac delays, resulting in the infliction of emotional distress.  The claim clearly relates to JetBlue's routes and provision of services, as did the Passenger Bill of Rights legislation addressed in <u>ATA</u>.  <u>See ATA</u>, 520 F.3d at 223; <u>see also</u> <u>Weiss v. El Al Israel Airlines, Ltd.</u>, 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006), <u>aff'd</u>, 39 Fed. Appx. 483 (2d Cir. Feb. 13, 2009)("Despite the fact that the ultimate goal of obtaining transit for plaintiffs was not fulfilled, El Al was performing common airline services for plaintiffs related to air travel, and plaintiffs' claim that El Al preformed ineptly or rudely, or even failed in the end to provide the services contracted for, is necessarily a claim in 'connection with or reference to airline ... services.'")(quoting <u>Morales</u>, 504 U.S. at 384). The negligent infliction of emotional distress claim is directly related to the airline's services, and allowing the claim to proceed would directly affect the services that airlines must provide on the chance that a plane would be stranded on a tarmac for several hours. To allow this, or any of the tort claims, to proceed would place airlines in the position of deciding whether to obey federal regulations and wait until they are allowed to deplane passengers, or to take matters into their own hands in order to avoid tort liability. The safety of the flying public clearly weighs against the latter, and points decidedly to ADA and implied FAA preemption.

Plaintiffs' FAA savings clause argument does not exempt the tort claims from preemption. The Supreme Court has determined that the FAA's savings clause is a "relic of the pre-ADA/no preemption regime," and that the "general 'remedies' savings clause cannot be allowed to supersede the [ADA's] specific substantive pre-emption provision." <u>Morales</u>, 504 U.S. at 385.  While claims falling outside of the scope of ADA preemption

such as claims for bodily injury or wrongful death, and for which the savings clause is often invoked, are allowed, see Cuomo, 520 F.3d at 225 (citing In re Air Crash Disaster at John F. Kennedy Int'l Airport, 635 F.2d 67 (2d Cir. 1980)), state law claims that plainly relate to an air carrier's prices, routes, or services are expressly preempted. See Riegel v. Medtronic, Inc., 552 U.S. 312, 325 (2008)("excluding common-law duties from the scope of preemption would make little sense.  State tort law ... disrupts the federal scheme no less than state regulatory law to the same effect."); Morales, 504 U.S. at 385 (recognizing that common law claims can be preempted by the ADA); United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 607 (7th Cir. 2000) ("State common law counts as an 'other provision having the force and effect of law' for purposes of [the ADA]"); Weiss, 471 F. Supp. 2d at 361.

There is also no merit to Plaintiff's argument that all tort claims must necessarily escape preemption because airlines are required to have insurance for personal injury and wrongful death claims.  While personal injury or wrongful death claims arising from matters unrelated to airlines' prices, routes, and services fall outside the scope of ADA preemption (and within the FAA's savings clause) thereby creating a need for insurance protection for passengers, the same is not true for the tort claims asserted here.  To allow the claims to proceed on this reasoning would allow the insurance requirement to swallow the rule of preemption.  That is clearly not what Congress intended.

The Court finds that the tort claims are expressly preempted by the ADA, and because Congress has occupied the field of on-ground safety of airplanes and air passengers, the claims are impliedly preempted by the FAA.

16

**b.  Whether Plaintiffs State Viable Claims**

Because the Court has determined that all of Plaintiffs' claims are preempted by federal law, there is no reason to address the viability of the claims under state law.

**III.**    **CONCLUSION**

For the reasons discussed above, Defendant's motion to dismiss the claims in the Amended Complaint [dkt. # 14] is **GRANTED**, and all claims in the Amended Complaint are **DISMISSED**.


**IT IS SO ORDERED**

Dated:  April 5, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

17